# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CANDY N. WEBB, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-18-01-SPS |
| | ) |
| CITY OF EUFAULA, a political subdivision and municipality; DON MURRAY; and SELINA JAYNE-DORNAN. | ) ) ) ) ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

This matter comes before the Court on motion by Defendants City of Eufaula, Don Murry, and Selina Jayne-Dornan (collectively, "Defendants") for dismissal of the Plaintiff's First Amended Complaint under Fed. R. Civ. P. 12. For the reasons set forth below, the Court finds that the Defendant's Motion to Dismiss Plaintiff's First Amended Complaint [Docket No. 19] should be hereby **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

The Plaintiff filed this case in state court in McIntosh County, Case No. CJ-17-46, on June 26, 2017, as to the above-named Defendants. The Defendants then removed the case to this Court on January 3, 2018. Plaintiff's state court Petition set out three state law claims – malicious interference with a contractual relationship, as to Defendants Murray and Jayne-Dornan; intentional infliction of emotional distress, as to Defendants Murray

and Jayne-Dornan; and breach of contract, as to the City of Eufaula – as well as a federal claim of gender discrimination under 42 U.S.C. §1983, as to Defendant Murray. The Defendants moved to dismiss the Petition, *see* Docket No. 4, and this Court granted the motion and dismissed for lack of subject matter jurisdiction but granted Plaintiff fourteen days to file an amended complaint. *See* Docket No. 17. The Plaintiff timely filed her First Amended Complaint on August 8, 2018, raising the same four claims, and Defendants have again moved for dismissal, which Plaintiffs have again opposed.[1] *See* Docket Nos. 18-19.

## ANALYSIS

The Defendants assert a number of arguments in support of dismissal: (i) that the Plaintiff has failed to state a claim for gender discrimination, (ii) that her tort claims are barred by the statute of limitations in the Oklahoma Governmental Tort Claims Act, (iii) that she has failed to state a claim as to intentional infliction of emotional distress, (iv) that her claims related to malicious interference with a contractual relationship and breach of contract fail because there was no contract between the Plaintiff and the City of Eufaula, and (v) that her claims are barred by the workers' compensation exclusivity provision. The Court will address each argument in turn.

---

[1] The Plaintiff's response to the Defendants' Motion to Dismiss Plaintiff's First Amended Complaint stated that she was relying on the response and objection filed in response to Defendants' Motion to Dismiss Plaintiff's Petition and Brief in Support. Thus, all references to arguments made by the Plaintiff refer to those made in Docket No. 8. The Court notes, however, that in filing the original response the Plaintiff failed to comply with this Court's Loc. Civ. R. 7.1(c) ("Briefs exceeding fifteen (15) pages in length shall be accompanied by an indexed table of contents showing headings or subheadings and an indexed table of statutes, rules, ordinances, cases, and other authorities cited."), regarding length and format of brief, as well as appearing at times to fail to comply with Loc. Civ. R. 5.2(a) ("The print style . . . shall not be smaller than 12-point font[.]"). The Court proceeds on the merits of the arguments of the parties, but cautions counsel that attention should be given in the future to compliance with this Court's Local Rules.

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but the statement of the claim under Rule 8(a)(2) must be "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), *citing Papasan v. Allain,* 478 U.S. 265, 286 (1986). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement . . . To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, *quoting Twombly*, 550 U.S. at 555-557, 570 [internal quotation marks omitted]. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. "While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in h[is] complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). This requires a determination as to "whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007), *quoting Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

**Section 1983, as to Defendant Murray.** The Court first addresses the federal claim raised by the Plaintiff in the First Amended Complaint. The Plaintiff characterizes it as "Count IV – 42 U.S.C. § 1983 – Gender Discrimination (as to Defendant Murray)." Docket No. 18, p. 6. "Section 1983 creates only the right of action; it does not create any substantive rights; substantive rights must come from the Constitution or federal statute." *Kvech v. New Mexico Dept. of Public Safety*, 987 F. Supp. 2d 1162, 1186 (D.N.M. 2013) (*citing Spielman v. Hildebrand*, 873 F.2d 1377, 1386 (10th Cir. 1989)). Rather, "[t]o state a claim upon which relief can be granted under § 1983, a plaintiff must allege: (i) a deprivation of a federal right; and (ii) that the person who deprived the plaintiff of that right acted under color of state law." *Kvech*, 987 F. Supp. 2d at 1186 *citing West v. Atkins*, 487 U.S. 42, 48 (1988). Put another way, the Plaintiff is required to "establish (1) a violation of rights protected by the federal Constitution or created by federal statute or regulation, (2) proximately caused (3) by the conduct of a 'person' (4) who acted under color of any statute, ordinance, regulation, custom[,] or usage, of any State or Territory or the District of Columbia." *Martinez v. Martinez*, 2010 WL 1608884, at *11 (D. N.M. March 30. 2010), *quoting Summum v. City of Ogden*, 297 F.3d 995, 1000 (10th Cir. 2002).

Here, Plaintiff has alleged that she was discriminated against by Defendant Murray on the basis of her gender and that, in his position as Chief of Police and her immediate supervisor, he was a decisionmaker in the termination of her employment. And although not specifically alleged, Defendant Murray's position as Chief of Police leads to an inference that he was acting under color of state law. *Jojola v. Chavez*, 55 F.3d 488, 493 (10th Cir. 1995) ("In the public employment context, the Supreme Court has noted 'state

employment is generally sufficient to render the defendant a state actor.'"), *quoting Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 935-936 n.18 (1982). Moreover, the Plaintiff has alleged that it was Defendant Murray's position of authority over her that led to her termination on the basis of her gender. *Id.* ("As we have stated, before conduct may be fairly attributed to the state because it constitutes action 'under color of state law,' there must be 'a real nexus' between the employee's use or misuse of their authority as a public employee, and the violation allegedly committed by the defendant."), *quoting D.T. by M.T. v. Independent School Dist. No. 16 of Pawnee County, Okla.*, 894 F.2d 1176, 1188 (10th Cir. 1990). Although the Plaintiff's First Amended Complaint is not a model for pleading, the Court thus construes Count IV as an allegation that Defendant Murray violated her Equal Protection rights under 42 U.S.C. § 1983, because she has alleged that Defendant Murray, as Chief of Police and her immediate supervisor, acted with malice and conscious disregard of her federally secured rights. *See* Docket No. 18, pp. 2, 8, ¶¶ 2, 24.

"The elements of a discrimination lawsuit are the same whether brought pursuant to § 1983 or Title VII." *Cooper v. Northwest Rogers County Fire Protection Dist.*, 2017 WL 3710081, at *7 (N.D. Okla. Aug. 28, 2017). But, "[t]he prima-facie case required to support a claim of intentional discrimination under the Equal Protection Clause varies based on the context and nature of the facts." *Morman v. Campbell County Memorial Hospital*, 632 Fed. Appx. 927, 934 (10th Cir. 2015). Here, the Court finds that to state a prima facie case of discrimination, the plaintiff must allege (1) that she belongs to a protected class, (2) that she suffered an adverse employment action, and (3) that such action

"took place under circumstances giving rise to an inference of discrimination." *EEOC v. PVNF, LLC*, 487 F.3d 790, 800 (10th Cir. 2007).

The Plaintiff has met this minimal pleading standard because she has alleged her protected class as a woman, that she was terminated from her employment, and that her termination was the result of discrimination based on her gender. More specifically, the Plaintiff alleges that she was the only female police officer for the City of Eufaula, that Murray lied to her, that he told her she did not have to report for a physical agility test then recommended termination in part because she did not appear, and that he did not follow progressive discipline procedures. *See* Docket No. 18, p. 6, ¶ 24(a)-(d). Furthermore, she alleges that she was the only employee who was asked to perform a physical agility test after being released for duties, that "[m]ale officers did not have to perform such test[,]" that "Murry afforded male police officers more time" when provided notice of termination, that "[m]ale employees who were on medical leave were not treated the same way" as she was, that "[m]ale employees who had work-related injuries were allowed to avail their rights without retaliation[,]" and that Defendant Murray recommended her termination based on her gender." Docket No. 18, p. 7, ¶ 24(f)-(m).

Although "the *McDonnell-Douglas*[2] burden-shifting framework applies to equal-protection claims in the employment context[,]" *Morman*, 632 Fed. Appx. at 934, *quoting Ney v. City of Hoisington*, 264 Fed. Appx. 678, 684 (10th Cir. 2008), "the standards for employment discrimination set forth in *McDonnel Douglas* simply do not 'apply to the

---

[2] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-803.

pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss.'" *Morman*, 632 Fed. Appx. at 933, *quoting Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-511 (2002) ("The prima facie case under *McDonnell Douglas*, however, is an evidentiary standard, not a pleading requirement. . . . This Court has never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss."). Defendant Murray nevertheless asserts that Plaintiff's claim fails because she was not qualified for a position as an officer for the City of Eufaula and she failed to allege facts that indicate she was treated less favorably than males in the same situation. The Court finds, however, that the Plaintiff's allegations are sufficient to allege a plausible claim of gender discrimination as to Defendant Murray. Furthermore, the argument as to the Plaintiff's qualifications is more properly raised in a motion for summary judgment, as it goes to facts not contained in the First Amended Complaint. Accordingly, the Defendants' Motion to Dismiss is denied as to the Plaintiff's claim against Defendant Murray for gender discrimination pursuant to § 1983 (Count IV).

**Breach of Contract, as to the City of Eufaula.** The Court next addresses Plaintiff's Count III (Breach of Contract) as to Defendant City of Eufaula. The Plaintiff asserts that she had an employment contract with the City of Eufaula through the City of Eufaula Personnel Policies Employee Manual ("the Manual"), and that she could only be fired upon certain conditions, but that she was fired based on a fabrication created by Defendant Murray and Defendant City of Eufaula. *See* Docket No. 18, p. 5, ¶ 19. The Plaintiff attached the Manual as part of the First Amended Complaint. *See* Docket No. 18,

Ex. 1.³ The Defendants assert that there was no contract, because the Policy Manual, states on the first page under Section 101, "Purpose," that **"[t]he Manual is not a legal document, does not constitute a contract of employment and does not give rise to a property right in continued employment with the city. . . . The employment relationship with the City (except for elected positions) [sic] and may be terminated at any time by the employee or the City solely for cause and the good of the service**." Docket No. 18, Ex. 1, p. 9 (emphasis in original).

Plaintiff relies on *Deboard v. Comanche County Court Clerk*, 2012 WL 1508738 (W.D. Okla. Apr. 25, 2012), in which the District Court found that the Petition made sufficient factual allegations to plead a breach of contract claim where "plaintiff specifically avers the Employee Personnel Handbook for Comanche County created a contract or agreement to which Plaintiff was either a third-party beneficiary, that Defendants breached the contract by requiring her to exhaust her accrued leave benefits, and that she was damaged as a result." *Id.*, 2012 WL 1508738, at *4. She therefore asserts that the Policy Manual created an implied contract in this case. However, the Manual was not made part of the Petition in that case and the District Court later granted summary judgment on this same claim once it had the opportunity to review the Handbook, which stated, "[T]he conditions of employment set forth therein 'are not intended to be and do not constitute a contract of employment.'" *Deboard v. Board of County Commissioners of*

---

³ "In evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also attached exhibits, and documents incorporated into the complaint by reference." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (internal citations omitted).

*County of Comanche*, 2013 WL 5676750, at *1. An employee handbook thus *may* form the basis of an implied contract between an employer and the employees, but "an employer may deny (or disclaim) any intent to make the provisions of a personnel manual part of the employment relationship," although "the disclaimer must be clear." *Russell v. Board of County Commissioners, Carter County*, 1997 OK 80, ¶¶ 23-24, 952 P.2d 492, 501-502. Here, there is a clear disclaimer on the part of the Defendant, and thus no contract. Defendant City of Eufaula is entitled to dismissal of Plaintiff's claim for breach of contract (Count III).

**Malicious Interference with a Contractual Relationship, as to Defendants Jayne-Dornan and Murray.** Defendants assert that the Plaintiff's malicious interference with a contractual relationship (Count I) claim is barred by the statute of limitations in the Oklahoma Governmental Tort Claims Act ("OGTCA"). In essence, they contend that the Plaintiff failed to comply with the notice requirement of the OGTCA, and that the assertion of tort claims individually is an attempt to circumvent the statute of limitations. Plaintiff's response is that tort claims as to individuals acting outside the scope of their employment are not subject to the notice requirement under the OGTCA. She contends that because her First Amended Complaint indicates Murray and Jayne-Dornan were acting outside the scope of their employment, compliance with the OGTCA was not required. Furthermore, the Plaintiff asserts that the question of whether an employee is acting within the scope of their employment should be left to a jury. The Court agrees that "[a]ll claims of tortious interference with business relationship, or other names for the same tort, such as intentional interference or malicious interference with contract or business relations, are excluded

from OGTCA coverage." *Hibben v. Oklahoma ex rel. Dept. of Veterans Affairs*, 2017 WL 1239146, at *11 (N.D. Okla. March 31, 2017). As such, the Plaintiff's Count I does not fall under OGTCA coverage.

In the context of at-will employment, "Oklahoma recognizes tortious interference with prospective economic advantage, as well as tortious interference with an actual contractual relationship. Thus, an actual contract is not a requirement for recovery." *Goff v. Hukill*, 2010 WL 2595785, at *7 (N.D. Okla. June 24, 2010), *citing Gonzalez v. Sessom,* 2006 OK CIV APP 61, ¶ 16, 137 P.3d 1245, 1249; *McNickle v. Phillips Petroleum Co.,* 2001 OK CIV APP 54, ¶ 21, 23 P.3d 949, 953–954; *and Harman v. Okla. ex. rel. N. Okla. Bd. of Regents,* 2007 WL 1674205, at *3 (W.D.Okla. June 7, 2007) (unpublished) (concluding that "[a]lthough there apparently is no Oklahoma Supreme Court authority directly recognizing [a tortious interference with prospective economic advantage] claim in the at-will employment context . . . lower Oklahoma courts have recognized the cause of action without hesitation"). *See also Cooper v. Northwest Rogers County Fire Protection District*, 2017 WL 3710081, at *4-5 (N.D. Okla. Aug. 28, 2017) ("[T]he Oklahoma Court of Civil Appeals has held that an at-will contract of employment can form the basis for a malicious interference with a contractual relationship claim. The Court has found no decision of the Oklahoma Supreme Court to indicate that it would disagree with the Oklahoma Court of Civil Appeals on this issue. Moreover, several federal district courts have determined that an at-will employee may state a claim for malicious interference with a contractual relationship, relying on the decisions of the Oklahoma Court of Civil Appeals.") (internal citations omitted). "The elements of a claim for malicious interference

are: 1) interference with a business or contractual right; 2) malicious and wrongful interference that is neither justified, privileged, nor excusable; and 3) damage proximately sustained as a result of the interference." *Tuffy's, Inc. v. City of Oklahoma City*, 2009 OK 4, ¶ 14, 212 P.3d 1158, 1165 (internal citations omitted). "The element of malice, for malicious interference, is defined as an unreasonable and wrongful act done intentionally, without just cause or excuse. This element clearly requires a showing of bad faith." *Id.*

The Plaintiff's First Amended Complaint indicates that Defendant Murray was the Eufaula Chief of Police, the Plaintiff's immediate supervisor, and a decision maker in her termination, and that Defendant Jayne-Dornan was the Mayor of Eufaula and likewise a final decision maker in the Plaintiff's termination. *See* Docket No. 18, p. 2, ¶¶ 2-3. She also alleges in the Petition that "Defendants Murray and Jayne-Dornan were the supervisors who fired Plaintiff and interfered with her contractual relationship by terminating her[,]" and that their "interference was in bad faith and contrary to the interests of the employer." *Id.*, pp.2-3, ¶¶ 6, 12. Specifically, she alleges that Defendant Murray told her she did not have to perform a physical agility test one day, then the next ordered her to run a physical agility test even though she was injured; that he had told her she was fired for being "no call-no show," but that she had not been; that he falsely accused her of misconduct and produced false statements regarding this misconduct, but that she had been in a different location and could not have done what she was accused of. *See* Docket No. 18, p. 3, ¶ 10. Furthermore, she alleges that she sought medical treatment for a condition and was fired in retaliation by Defendant Murray and Defendant Jayne-Dornan, and that

they accused her of malingering and dissuaded her from seeking benefits, then terminated her while she was still under medical care. *See Id.*, ¶ 11.

Although "[a] malicious interference claim "is viable only if the interferor is not a party to the contract or business relationship[,]" *Cooper*, 2017 WL 3710081, at *5, *quoting Wilspec Tech. Inc. v. DunAn Holding Group, Co.*, 2009 OK 12, ¶ 15, 204 P.3d 69, "an employee's interference with [an employer's] contract will be privileged only when the interference is undertaken in good faith and for a bona fide organizational purpose." *Cooper*, 2017 WL 3710081, at *5. Here, the Plaintiff has alleged that the Defendants' actions were in bad faith and against her employer's interests, and that they interfered for the purpose of retaliation. *See* Docket No. 18, p. 3, ¶ 12. The Court thus finds that the Plaintiff has stated a claim for malicious interference with a business relationship as to Defendants Jayne-Dornan and Murray. *See Cooper*, 2017 WL 3710081, at *5 ("Plaintiff alleges that Dainty and Shockley acted in bad faith and against the interests of the District by interfering with her employment relationship. Plaintiff further alleges that Dainty and Shockley interfered for the purposes of concealing their allegedly unlawful conduct, retaliating against plaintiff, and harassing her. Thus, plaintiff has stated a claim for malicious interference with a business relationship against Dainty and Shockley (count six).") (internal quotations and citations omitted). Accordingly, the Defendants' Motion to Dismiss is DENIED as to the Plaintiff's claim for malicious interference with a contractual relationship (Count I).

**Intentional Infliction of Emotional Distress, as to Defendants Jayne-Dornan and Murray.** Defendants likewise assert that the Plaintiff's claim of intentional infliction

of emotional distress (Count II) is barred by the statute of limitations in the OGTCA. The Court agrees with the Plaintiff, however, that such a claim goes to actions outside the scope of employment and is thus not barred by the OGTCA's statute of limitations. *Pellegrino v. State ex rel. Cameron Univ. ex rel. Bd. of Regents of State*, 2003 OK 2, ¶ 7, 63 P.3d 535, 537 ("A claim alleging that an employee injured the plaintiff while acting outside the scope of his or her employment, an individual capacity claim, need not be based upon compliance with the notice requirements of the Governmental Tort Claims Act[.]"). *See also Harmon v. Cradduck*, 2012 OK 80, ¶ 19, n.20, 286 P.3d 643, 650 n.20 ("[A]ny malicious or bad faith act by an employee falls outside the scope of employment for purposes of the GTCA."); *Simington v. Parker*, 2011 OK CIV APP 28, ¶ 28, 250 P.3d 351, 359 (reversing order of dismissal where "Simington's claims [including one of intentional infliction of emotional distress] as pled against Parker personally also appear to be based upon allegations that her actions were outside the scope of her employment.").

The Court nevertheless finds that dismissal of this claim is appropriate. The Plaintiff's claim incorporated her earlier allegations as to the physical agility test and seeking medical care, and additionally alleged that Defendants Murray and Jayne-Dornan disregarded her rights even though they were fully aware that she was diagnosed with a mental health disorder including anxiety and PTSD, and that their treatment of her exacerbated her condition. *Id.*, p. 4, ¶ 16. Accordingly, the Plaintiff contends that she has presented a question of fact for the jury. The Court finds, however, that these "employment-related claims" are not sufficient to state a claim for intentional infliction of emotional distress. *See Rigo v. Apex Remington, Inc.*, 2015 WL 3746307, at *1 (N.D. Okla.

June 15, 2015) ("[E]mployment related claims generally do not rise to the level of outrageous conduct necessary to support a claim of intentional infliction of emotional distress."), *citing, inter alia*, *Daniels v. C.L. Frates & Co.*, 641 F. Supp. 2d 1214, 1218 (W.D. Okla. 2009) ("Oklahoma courts, however, have routinely held that workplace harassment claims do not rise to the level of outrageous conduct necessary to support a claim of intentional infliction of emotional distress."). Accordingly, Defendants are entitled to dismissal of Plaintiff's claim for Intentional Infliction of Emotional Distress (Count II).

In sum, the Court finds that the Defendant's Motion to Dismiss as to Plaintiff's Count II (Intentional Infliction of Emotional Distress) and Count III (Breach of Contract) should be granted, and that it should be otherwise denied.

## CONCLUSION

Consequently, IT IS ORDERED that the Defendant's Motion to Dismiss Plaintiff's First Amended Complaint [Docket No. 19] is hereby GRANTED as to Counts II (Intentional Infliction of Emotional Distress) and III (Breach of Contract), and is otherwise DENIED.

**DATED** this 28th day of September, 2018.

_____
Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma