**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| 1. CANDY N. WEBB, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 18-CV-01-SPS |
| vs. | ) | U.S. Magistrate Judge Steven P. Shreder |
| | ) | |
| 1. CITY OF EUFAULA, a political | ) | |
| subdivision and | ) | |
| municipality; | ) | |
| 2. DON MURRAY, individually; | ) | |
| 3. SELINA JAYNE-DORNAN, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT**

Respectfully Submitted,

**WILBURN, MASTERSON & HAMPTON**

By *s/ Amy E. Hampton*
    **MICHAEL J. MASTERSON, OBA# 5769**
    **AMY E. HAMPTON, OBA # 20235**
    2421 E. Skelly Dr.
    Tulsa, OK  74105-6006
    (918) 494-0414
    FAX: (918) 493-3455
    E-Mail:
    mike.masterson@wilburnmasterson.com
    amy.hampton@wilburnmasterson.com
    Attorney for Defendants

# TABLE OF CONTENTS

Introduction ....................................................................................................................1

Statement of Undisputed Material Facts .....................................................................2

Arguments and Authorities..........................................................................................12

    I.   The undisputed material facts demonstrate that Defendants are entitled to judgment as a matter of law regarding the Plaintiff's claim for Title VII gender discrimination......12

        A.  Plaintiff failed to exhaust her state administrative remedies before filing her lawsuit ....................................................................................................................12

        B. Plaintiff filed her lawsuit prior to obtaining a right to sue letter from the Oklahoma Attorney General's Office of Civil Rights Enforcement or the EEOC .....................15

        C. Plaintiff cannot satisfy the elements of a prima facie claim for Title VII gender discrimination ...................................................................................................17

II. Defendants are entitled to summary judgment as to Plaintiff's claim for malicious interference with a contractual relationship......................................................................................20

III. Plaintiff's claims in this case are barred by the workers' compensation exclusivity provision ...........................................................................................................................23

IV.  Defendants are entitled to summary judgment as to the Plaintiff's claim for punitive damages ...............................................................................................25

Conclusion....................................................................................................................25

# TABLE OF AUTHORITIES

Cases

*Barzellone v. City of Tulsa*, 210 F.3d 389 (10th Cir. 2000) ........................................................19

*Dedmon v. Staley*, 315 F.3d 948, 949 n. 2 (8th Cir.2003) ............................................................22

*Hawk Enterprises, Inc. v. Cash America Int'l, Inc.*, 2012 OK CIVA PP 66, 282 P.3d 786 .........21

*MacDonald v. Corporate Integris Health*, 2014 OK 10, 321 P.3d 980, 982 ...............................13

*Miller v. Johnson,* 2013 OK CIV APP 59, 307 P.3d 387, 389....................................................20

*Mitchell v. City of Bartlesville, Oklahoma,* No. 11-CV-367-GKF-TLW, 2013 WL 1499042
    (N.D. Okla. Apr. 11, 2013)........................................................................................................19

*Odom v. Penske Truck Leasing Co.,* 2018 OK 23, ¶ 14, 415 P.3d 521, 527...............................23

*Parret v. UNICCO Service Co.*, 2005 OK 54, 127 P.3d 572 .....................................................24

*Shackelford v. Oklahoma Dept. of Corrections ex rel. State*, 182 P.3d 167, 168 (Okla. App. Div.
    3 2007)........................................................................................................................................14

*Tarrant v. Guthrie First Capital Bank,* 2010 OK CIV APP 82, § 15, 241 P.3d 280, 284...........20

*Tuffy's Inc. v. City of Oklahoma City*, 2009 OK 4, 212 P.3d 1158, 1165...................................20


**Rules**

FED. R. CIV. P. 56.............................................................................................................................1

LCvR 56.1 ........................................................................................................................................1


**Statutes**

OKLA. STAT. tit. 12, § 100.............................................................................................................17

OKLA. STAT. tit. 23, § 9.1..............................................................................................................24

OKLA. STAT. tit. 25, § 1350 .............................................................................................. 13, 14, 15, 16

OKLA. STAT. tit. 70 § 3311 ......................................................................................................18, 19

OKLA. STAT. tit. 70, § 3311.11 .................................................................................................18, 19

OKLA. STAT. tit. 85A, § 5 ..............................................................................................................23

OKLA. STAT. tit. 85A, § 7 ..............................................................................................................23

Defendants, the City of Eufaula ("**City**"), Don Murray ("**Murray**"), and Selina Jayne-Dornan ("**Jayne-Dornan**") (collectively, "**Defendants**"), pursuant to FED. R. CIV. P. 56 and LCvR 56.1, respectfully submit their Motion for Summary Judgment ("**MSJ**").

## Introduction

Plaintiff Candy Webb ("**Plaintiff**" or "**Webb**") was hired as a police officer for the City in approximately September of 2013. While Webb was allowed to serve as a police officer while waiting to attend the Council on Law Enforcement Education and Training ("**CLEET**") academy to become CLEET certified, her continued employment as a police officer was conditioned on her successful CLEET certification, as required by Oklahoma law.  Webb was terminated from her position as a City of Eufaula police officer because she failed to complete the CLEET certification as required.

On June 26, 2017, Plaintiff filed her Petition against the Defendants, asserting the following claims: (i) malicious interference with a contractual relationship (as to Murray and Jayne-Dornan); (ii) intentional infliction of emotional distress (as to Murray and Jayne-Dornan); (iii) breach of contract (as to the City); (iv) gender discrimination pursuant to 42 U.S.C. § 1983 (as to Murray); and (v) punitive damages (as to Murray and Jayne-Dornan).  By Order dated September 28, 2018 (Doc. No. 28), the Court dismissed the Plaintiff's claims for intentional infliction of emotional distress and breach of contract.  Thus, the Defendants move herein for summary judgment as to the Plaintiff's remaining claims: (i) gender discrimination pursuant to 42. U.S.C. § 1983 (as to Murray); (ii) malicious interference with a contractual relationship (as to Murray and Jayne-Dornan); and (iii) punitive damages.

## Statement of Undisputed Material Facts

1.     Plaintiff previously filed an action against the Defendants on August 27, 2015 in the case styled as *Candy N. Webb v. City of Eufaula, et al.*, McIntosh County Case No. CJ-15-93 ("**Previous Action**").  *See* Docket Report, McIntosh County Case No. CJ-15-93, attached as **Exhibit 1**.

2.     On January 19, 2016, the City filed a Motion to Dismiss the original Petition in the Previous Action, and on February 25, 2016, Judge Jim D. Bland issued an Order granting the Plaintiff twenty (20) days within which to file an Amended Petition.  *See* Exhibit 1.

3.     On March 17, 2016, the Plaintiff filed her First Amended Petition in the Previous Action.  *See* Exhibit 1.

4.     On March 30, 2016, the City filed its second Motion to Dismiss Plaintiff's First Amended Petition in the Previous Action, which was set for hearing on June 9, 2016 at 9:00 a.m. *See* Exhibit 1.

5.     Plaintiff voluntarily dismissed the Previous Action by filing a Dismissal without Prejudice on June 27, 2016.  *See* Exhibit 1.

6.     The Plaintiff *re-filed her action* on June 26, 2017 in McIntosh County Case No. CJ-2017-00049 ("**Second State Court Action**").  *See* Docket Report, McIntosh County Case No. CJ-2017-00049, attached as **Exhibit 2**.

7.     Plaintiff's June 26, 2017 Petition asserted the following claims: (i) malicious interference with a contractual relationship (as to Murray and Jayne-Dornan); (ii) gender discrimination pursuant to 42 U.S.C. § 1983 (as to Murray); and (iii) punitive damages (as to Murray and Jayne-Dornan).  *See* Petition, Doc. No. 2-1.

8.     Defendants removed the Second State Court Action to this Court on January 3, 2018.  *See* Notice of Removal (Doc. No. 2).

9.     Defendants filed a Motion to Dismiss Plaintiff's Petition with this Court on January 10, 2018.  *See* Defendants' Motion to Dismiss Plaintiff's Petition (Doc. No. 4).

10.    The Court issued its Opinion and Order on July 6, 2018 (Doc. No. 17), granting Defendant's Motion to Dismiss, stating "Plaintiff's claim under Section 1983 is subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(6) for lack of any allegations as to gender discrimination," and giving the Plaintiff leave to file an Amended Complaint within fourteen (14) days.  *See* Opinion and Order (Doc. No. 17).

11.    Plaintiff filed her First Amended Complaint on July 20, 2018. *See* Doc. No. 18.

12.    Regarding her claim for § 1983 gender discrimination, the Plaintiff alleges as follows in her First Amended Complaint:

23.    In support of Count IV, Plaintiff restates and re-alleges the foregoing allegations in their entirety as though fully set forth herein.  Additionally, Plaintiff alleges:

24.    Plaintiff was discriminated against on the basis of her gender by Defendant Murray, including the following:

a) Plaintiff was a female police offer with Eufaula and the only female police officer at Eufaula during her employment with Eufaula.

b) Murray falsely stated that he had written statements against Plaintiff that he did not have or that he knew to be false.

c) Murray told Plaintiff that she did not have to report for the physical agility test and then recommended termination based in part her [sic] for not appearing and denied having told plaintiff she did not need to appear.

d)  The written policy, with respect to Plaintiff, was bypassed and not followed by Murray who recommended termination and did not follow progressive discipline.

e) Defendant Murray was aware that Plaintiff was not present during the time period that he claims he had written statements but nevertheless used this untrue allegation as a basis to recommend termination.

f) Plaintiff was the only employee ever asked by Defendant Murray to perform the physical agilities test after being released for duty, notwithstanding that this requirement was rescinded by him.  Male police officers did not have to perform such test.

h) Defendant Murray provided notice of a pre-termination notice to Plaintiff on June 16th 2014 at 9:40 a.m. for a meeting that same day at 2:00 p.m.  On prior instances, Murray afforded male police officers more time.

i) Defendant Murray demonstrated his pretext by telling Plaintiff she was terminated for being a "no-call no show" despite Plaintiff not being medically released.  Male employees who were on medical leave were not treated the same way.  Murray thereafter made his intention to terminate plaintiff clear.

k) Male employees who had work related injuries were allowed to avail their rights without retaliation.

l) Murray was aware of the terms and conditions of the handbook and applied it inconsistently.

m) Murray recommended termination based on her gender and treated her dissimilar based on her gender.

23.    As a result of Defendant Murray's conduct, Plaintiff has sustained substantial damages in excess of $10,000.00.

24.    Defendant Murray has acted with reckless disregard for the rights of Plaintiff, intentionally and with malice and with conscious disregard of the federally secured rights of Plaintiff and as such punitive damages in excess of $10,000.00 should be assessed against them.

25.    That Plaintiff should be awarded a reasonable amount of attorney fees and costs incurred herein.

*See* First Amended Complaint (Doc. No. 18), at 23-25.[1]

13.    Regarding her claim for malicious interference with a contractual relationship,

Plaintiff alleges as follows in her First Amended Complaint:

---

[1] Defendants use herein the numbering reflected in Plaintiff's First Amended Complaint (Doc. No. 18).

9.      In support of Count I, Plaintiff re-alleges and re-states each and every foregoing allegation as though fully set forth herein.

10.     Defendant Murray, the Chief of Police, ordered Plaintiff to run a physical test, notwithstanding her injury. A few weeks prior, Murray had already told plaintiff she was fired for a "no call" "no show." This was false as plaintiff was not a "no call "no show." The day before the physical agility test, Murray specifically told plaintiff that she did not need to appear. Defendant Murray also falsely accused Plaintiff of misconduct, and falsely stated that sworn statements from co-workers existed. In fact the sworn statements allegedly against Plaintiff concerned conduct allegedly committed by Plaintiff; however, such conduct was impossible to be committed by Plaintiff because she was 200 miles away when such conduct occurred. Defendant Murray was aware that such statements, if such existed were untrue. Thus, the alleged statements against plaintiff were either a ruse or false statements.

11.     Plaintiff availed herself of his rights under 85A O.S. §§ 1 et seq., by seeking necessary medical treatment. Defendants Murray and Jayne-Dornan retaliated against Plaintiff by terminating her in June of 2014 and retaliating against her. Further, Defendants Jayne-Dornan and Murray dissuaded Plaintiff from seeking benefits, terminating her while still under medical care, and accusing her of malingering despite the complete absence of either one being qualified to provide a medical diagnosis.

12.     Defendants Murray and Jayne-Dornan were the supervisors who fired Plaintiff, and interfered with her contractual relationship by terminating her. Such interference was neither justifiable nor excusable. Further, such interference was in bad faith and contrary to the interests of the employer.

13.     As a result of the conduct of Defendants Murray and Jayne-Dornan, Plaintiff has sustained actual damages in excess of $10,000.00.

14.     Defendants Murray and Jayne-Dornan acted with reckless disregard for the rights of Plaintiff and acted intentionally with malice, and as such, punitive damages should be assessed against them.

See Plaintiff's First Amended Complaint (Doc. No. 18), at ¶¶ 9-14.

14.     In its Opinion and Order filed on September 28, 2018 (Doc. No. 28), this Court dismissed Plaintiff's breach of contract claim against the City and Plaintiff's intentional infliction of emotional distress claim against Jayne-Dornan and Murray. See Opinion and Order (Doc. No. 28).

15. The Court found that there was no implied contract of employment between the City and the Plaintiff, as the City had clearly disclaimed such in the Employee Manual. *See* Opinion and Order (Doc. No. 28).

16. Plaintiff testified at her deposition that she worked "around 9 or 10 months" as a police officer before she first took the agility test in June or July of 2014. *See* Deposition Transcript of Candy Webb, September 20, 2018, at 51:18-52:5, attached as **Exhibit 3**.

17. Plaintiff knew she would have to take an agility test, as she was informed of such "[u]pon hire." *See* Exhibit 3, at 52:6-10; 152:5-8.

18. Plaintiff took her first agility test in Ada, Oklahoma. *See* Exhibit 3, at 52:16-24.

19. Plaintiff described the agility test as follows at her deposition:

Q. Okay. Can you describe to me what this—the test consisted of?
A. It's a 2 minute 22 second. It's a passing. You run a full square around a gym. You do a crisscross with your feet with a crisscross shuffle in a square. And you can only go certain directions. Then from there you run to a mat. And you have to drop down on this mat. You have to pull your body weight with your forearms, slap the floor, get up, run to the next mat, bear crawl, slap the floor, run around the cones, run zigzag through the cones, run all of the way back to the other side of the gym, run back down. You pick up a pretend deadweight dummy. It's like actually like a fire— fire hose wrapped up to resemble a body, and you have to drag it across the mat.

*See* Exhibit 3, at 53:13-54:2.

20. Plaintiff testified that her time for the test was two minutes, 24 seconds, and she was told at the test site that she did not pass. *See* Exhibit 3, at 54:6-16.

21. Plaintiff testified that after she was told she did not pass, she realized her knee was injured:

Q. Okay. Did they tell you there that you didn't pass?
A. Yes.
Q. Okay. What happened after that?

A.     I told -- well, immediately I knew something was wrong with my knee, and the girl from CLEET come over to me.  And I told her there was something wrong -- it was instant.  And I told her there was something wrong with my knee.  She wanted me to rerun the test 10 minutes later.

Q.     Do you recall her name?

A.     No.

Q.     Why did she want you to rerun the test?

A.     I don't know.

Q.     Did you ask to redo the test?

A.     I asked to redo it at a different time.

*See* Exhibit 3, at 54:17-55:4.

22.     On May 7, 2014, Plaintiff's medical provider, Brandy S. Tiger PA-C wrote a letter stating as follows: "Candy Beal is currently under my medical care and may not return to work at this time.  Please excuse Candy for six (6) day(s).  She may return to work on 05/13/2014."  *See* May 7, 2014 Letter from B. Tiger, PA-C, to "Whom It May Concern," attached as **Exhibit 4**.

23.     On May 12, 2014, Brandy Tiger, PA-C wrote a second letter, stating:

Candy Webb is currently under my medical care and may not return to work at this time.  Please excuse Candy for 1-2 day(s).

She may return to work on 05/14/2014.

Activity is restricted as follows: no climbing, running, kneeling for 2-3 weeks for moderate to severe knee sprain.  Initial injury stated by patient to occur on 05/06/2014 with first visit for knee sprain on 05/07/2014.  Please allow the above patient to retest in 3-4 weeks to allow for swelling to improve.

If you require additional information please contact our office.

*See* May 12, 2014 Letter from B. Tiger, PA-C, to "Whom It May Concern," attached as **Exhibit 5**.  *See also,* Exhibit 3, at 65:17-66:2.

24.     On May 28, 2014, Murray authored a letter to Plaintiff, stating as follows;

Upon review of the information received from your doctor, I have noted that while you were allowed to return to work, the doctor additionally placed restrictions on you i.e. "no climbing, running or kneeling for 3 weeks."  As such I

am unable to allow you to continue to perform the normal duties of a street officer.

Effective immediately you are placed on modified duties and are directed to park your assigned patrol vehicle at the police department.  Until further notice your work schedule will be Thursday through Monday, 16:00-00:00.   This schedule is to begin this Thursday the 29th and you will be assigned to dispatch in order to learn that portion of the operation of the department.

*See* May 28, 2014 Letter from D. Murray to C. Webb, at **Exhibit 6.**

25.    On May 28, 2014, Barbara K. Tuley, MD authored a letter stating as follows:

Candy Webb was seen by me in clinic today.  She needs a temporary medical leave until I see her Tuesday, June 3rd at 1pm.
If you require any further information please contact my clinic.

*See* May 28, 2014 Letter from B. Tuley, MD to "Whom It May Concern," attached as **Exhibit 7.**

26.    On May 29, 2014, Captain Charles Hammett made a written statement stating:

On May 28- 2014 I was directed by Chief Don Murray to hand deliver a letter to Officer Candy Web.  I called Candy and she was not home but she said she would come by the Police Department when she could.  Around 1 P.M. she arrived and I gave her the letter in the dispatch area.

On the same day around 3 p.m. Candy came back to the Police Department and contacted me and gave me a letter from her doctor stating and [sic] needed off for temporary medical leave until she was seen again on June 3rd at 1 P.M.

*See* May 29, 2014 Written Statement of Captain Charles Hammett, attached as **Exhibit 8.**

27.    On June 3, 2014, Barbara Tuley, MD wrote a letter to "Whom It May Concern,"

stating as follows:

Candy Webb is currently under my medical care and may not return to work at this time.  Please excuse Candy for 7 day(s).  She may return to work on 06/10/2014.
Activity is restricted as follows:  none.
If you require additional information please contact our office.

*See* June 3, 2014 Letter from B. Tuley, MD to "Whom It May Concern," attached as **Exhibit 9.**

28.     On June 10, 2014, Barbara Tuley, MD authored a letter stating as follows: "Candy Webb is currently under my medical care and may return to work at this time.  She may return to work on 06/11/2014.  Activity is restricted as follows: none."  *See* June 10, 2014 Letter from B. Tuley, MD to "Whom It May Concern," attached as **Exhibit 10**.

29.     Plaintiff testified that she never had any conversations with Don Murray regarding her workers' compensation claim.  *See* Exhibit 3, at 101:20-24.

30.     Plaintiff testified that she never had any conversations with the mayor about her workers' compensation filing.  *See* Exhibit 3, at 101:2-25-102:2.

31.     On June 12, 2014, Murray authored a letter to Plaintiff stating as follows:

During a meeting in my office on the 17th of May 2014 you were informed that on the 12th day of June at 10:00 AM you would be required to retake the physical agilities test at the police department in preparation for the basic academy. Additionally, at that time you were informed that failure to successfully complete the test in the allotted time would result in your dismissal from the Police Department.

On the morning of the 12th of June 2014 you failed to appear for the required testing and failed to contact the police department in any manner.  Having failed to complete the mandatory testing your employment with the City of Eufaula is hereby terminated effective upon receipt of this letter.

*See* June 12, 2014 Letter from D. Murray to C. Webb, attached as **Exhibit 11.**

32.     Plaintiff acknowledged at her deposition that Murray advised her she would have to retake the physical agility test or she was "finished." *See* Exhibit 3, at 114:24-116:13.

33.     Plaintiff testified that she filed her workers' compensation claim after the conversation referenced in Paragraph No. 32.  *See* Exhibit 3, at 117:3-5.

34.     When asked at her deposition what the basis of her Equal Employment Opportunity Commission ("**EEOC**") claim was, Plaintiff testified as follows:

Q.     Okay.  What were the bases for filing the –what were the charges that you filed through the EEOC?

A.    ***I don't know.  I would have to reread everything and refresh.  I don't know***.

Q.    Okay.  To your knowledge right now without looking at any documents, do you recall what it was that you were complaining of to the EEOC?

A.    ***I don't know right now***.

*See* Exhibit 3, at 137:13-20 (emphasis added).

35.    Regarding treatment of male officers, Plaintiff testified as follows:

Q.    Are you aware of any -- during the time that you were a Eufaula police officer, are you aware of any male Eufaula police officer who failed to satisfy the CLEET physical agility test -- strike that.

    During the time that you were employed with Eufaula, are you aware of a male officer that failed to pass the CLEET agility test?

A.    I'm not aware.

Q.    Okay.  During the time that you were a Eufaula police officer are you aware of any male officer that failed the CLEET test that still got to keep their job?

A.    I'm not aware.

Q.    Are you aware of any female officers that took medical leave for work related injuries and then returned to work, failed to meet the CLEET requirements, and was treated differently for it?

A.    I'm not aware.

Q.    Are you aware of any male officers that took temporary medical leave for work related injuries, returned to work, failed to meet CLEET requirements and were treated differently for it?

A.    I don't know.

*See* Exhibit 3, at 149:19-150:15.

36.    On June 16, 2014, Murray advised Plaintiff by hand-delivered letter that she had a pre-determination meeting scheduled at 14:00 in the office of the Mayor.  *See* June 16, 2014 Letter from D. Murry to Plaintiff, attached as **Exhibit 12**.

37.    By letter dated June 17, 2014, Murray advised Jayne-Dornan as follows:

It is very obvious to me that Ms. Webb refuses to accept any type of responsibility for her actions.  This was made clear during the meeting we had in your office when she repeatedly said she had not received anything in writing stating that she was to take the agilities test.

At this time Webb has still failed to complete an "on the job injury report" as mandated.  She states she did not know she was supposed to do this yet

> she signed off on the policy and procedure which mandates such action. She was fully aware of the requirement.  Additionally she has failed to appear or call in regarding her scheduled re-testing on the agilities course.
>
> It appears that Ms. Webb has attempted to use medical and psychological claims as a means to avoid her duties.  It is my belief that if her employment is continued, the City of Eufaula will suffer greatly in a financial capacity.

*See* June 17, 2014 Letter from Murray to Jayne-Dornan, attached as **Exhibit 13.**

38.     By letter dated June 23, 2014, Jayne-Dornan advised the Plaintiff of her agreement with Murray's recommendation that Plaintiff's employment be terminated.  *See* June 23, 2014 Letter from Jayne-Dornan to Plaintiff, attached as **Exhibit 14.**

39.     A Notification of Termination indicates Plaintiff was appointed on September 16, 2013 and terminated on June 23, 2014.  The Notification also states that Plaintiff appealed to the City Council, which upheld the termination on July 29, 2014.  *See* Notification of Termination, attached as **Exhibit 15.**

40.     Plaintiff filed an EEOC Charge of Discrimination on August 19, 2014, alleging, *inter alia*, sex discrimination.  *See* EEOC Charge of Discrimination, attached as **Exhibit 16.**

41.     On September 23, 2015, the EEOC mailed its Dismissal and Notice of Rights to the Plaintiff, advising in part that "[b]ased upon its investigation, the EEOC is unable to conclude that the information obtained establishes violation of the statutes."   *See* EEOC Dismissal and Notice of Rights, attached as **Exhibit 17**.

42.     The EEOC Dismissal and Notice of Rights also stated: "You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit must be filed **WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost."  *See* Exhibit 17 (emphasis in original).

43.     The Plaintiff filed for unemployment benefits with the Oklahoma Employment Security Commission ("**OESC**") after her termination, and the OESC disallowed benefits on the statutory section governing discharge for misconduct, noting "a violation of company policy. The final incident occurred when she failed to report for a physical agility assessment as scheduled." *See* OESC Materials, attached as **Exhibit 18**.

<u>**Arguments and Authorities**</u>

**I.     The undisputed facts demonstrate that the Defendants are entitled to judgment as a matter of law regarding the Plaintiff's claim for Title VII gender discrimination.**

Defendants are entitled to summary judgment as to Plaintiff's claim for Title VII gender discrimination because: (A) Plaintiff failed to exhaust her state administrative remedies before filing her lawsuit; (B) Plaintiff filed her lawsuit prior to obtaining a right to sue letter from either the Oklahoma Attorney General's Office of Civil Rights Enforcement or the EEOC; and (C) Plaintiff cannot satisfy the elements of a *prima facie* claim for Title VII gender discrimination.

**A. Plaintiff failed to exhaust her state administrative remedies before filing her lawsuit.**

OKLA. STAT. tit. 25, § 1350, entitled "Creation of Cause of Action—Common Law Remedy Abolished—Standing—Requirements for Notice of Right to Sue—Jury Trial—Defenses—Remedies," sets forth the procedure for making an employment discrimination claim in Oklahoma, and states as follows:

A.      *A cause of action for employment-based discrimination is hereby created and any common law remedies are hereby abolished.*

B.      *In order to have standing in a court of law to allege discrimination arising from an employment-related matter*, in a cause of action against an employer for discrimination based on race, color, religion, sex, national origin, age, disability, genetic information with respect to the employee, or retaliation, *an aggrieved party must, within one hundred eighty (180) days from the last date of alleged discrimination, file a charge of discrimination in employment with the Attorney General's Office of Civil Rights Enforcement or the Equal Employment Opportunity*

       ***Commission alleging the basis of discrimination believed to have been perpetrated on the aggrieved party. <u>Upon completion of any investigation, the Attorney General's Office of Civil Rights Enforcement may transmit the results of any administrative hearing and determination to the Equal Employment Opportunity Commission or issue the complaining party a Notice of a Right to Sue</u>.***

C.    Should a charge of discrimination be filed with the Attorney General's Office of Civil Rights Enforcement and not be resolved to the satisfaction of the charging party within one hundred eighty (180) days from the date of filing of such charge, ***the Attorney General's Office of Civil Rights Enforcement, upon request of any party shall issue a Notice of a Right to Sue, which must be first obtained in order to commence a civil action under this section***.

D.    All civil actions brought pursuant to a Notice of a Right to Sue from the Attorney General's Office of Civil Rights Enforcement for redress against any person who is alleged to have discriminated against the charging party and against any person named as respondent in the charge shall be commenced in the district court of this state for the county in which the unlawful employment practice is alleged to have been committed.

      . . .

I.    ***<u>No action may be filed in district court as provided in this section more than ninety (90) days after receiving a Notice of a Right to Sue from the Attorney General's Office of Civil Rights Enforcement</u>***.

*See* OKLA. STAT. tit. 25, § 1350 (emphasis added).

Significantly, § 1350 also abolishes common law remedies relating to discrimination claims. *See MacDonald v. Corporate Integris Health*, 2014 OK 10, 321 P.3d 980, 982 ("This statute expressly creates a cause of action for employment-based discrimination and abolishes common law remedies for such wrong. In the place of common law remedies for employment-based discrimination, section 1350 authorizes a court (1) to enjoin unlawful discrimination employment practices, (2) to grant affirmative relief such as reinstatement, (3) to award back pay, and (4) to award an additional amount for liquidated damages.") (footnote omitted). Thus, failure to comply with § 1350 leaves the Plaintiff without any common law remedies for her claim of discrimination.

As the title of § 1350 makes clear, adherence to the stated procedure is a jurisdictional requirement for a later-filed lawsuit in either state or federal court, as the statute's title specifically references "standing" to sue.  Here, the Plaintiff neglected to file a complaint with the Oklahoma Attorney General's Office of Civil Rights Enforcement, which is a prerequisite to having standing to sue in court for employment discrimination.  Because the Plaintiff failed to follow the proper procedure for filing a complaint, she likewise failed to obtain a right to sue letter from the Office of Civil Rights Enforcement.  Section 1350(B) specifically states that "[u]pon completion of any investigation, the Attorney General's Office of Civil Rights Enforcement may transmit the results of any administrative hearing and determination to the Equal Employment Opportunity Commission or issue the complaining party a Notice of a Right to Sue."  Thus, the Attorney General's office contemplates sending appropriate claims to the EEOC.  Here, the Plaintiff skipped the step of submitting her claim to the proper administrative agency, the Attorney General's Office of Civil Rights Enforcement.  Thus, she did not exhaust her administrative remedies before filing her lawsuit in McIntosh County.  *See Shackelford v. Oklahoma Dept. of Corrections ex rel. State*, 182 P.3d 167, 168 (Okla. App. Div. 3 2007), *as corrected* (June 12, 2007) (in lawsuit for handicap discrimination, trial court lacked jurisdiction of any claim under Oklahoma anti-discrimination statutes because Plaintiff failed to exhaust the administrative remedies required by said statutes.).

OKLA. STAT. tit.   25, § 1308, which sets forth exceptions to discrimination in employment, states as follows:

> *It is not a discriminatory practice*:
>
> 1. For an employer to hire and employ an employee, or an employment agency to classify or refer for employment an individual, for a labor organization to classify its membership or to classify or refer for employment an individual, or for an employer, labor organization, or joint labor-management committee

> controlling an apprenticeship or other training or retraining program to admit or employ an individual in the program, on the basis of religion, sex, national origin, age, disability, or genetic information *if such action is related to a bona fide occupational qualification reasonably necessary to the normal operation of the business or enterprise*; . . . .

*See* OKLA. STAT. tit. 25, §1308 (emphasis added). Because the Plaintiff was required by law to complete the CLEET agility test within six months of her date of hire, it was a bona fide occupational qualification reasonably necessary to the normal operation of the Eufaula Police Department.  Her termination for failure to meet the statutory requirement is not discriminatory.

Plaintiff's claim for gender discrimination is thus barred and Defendants are entitled to summary judgment on the claim.

**B.  Plaintiff filed her lawsuit prior to obtaining a right to sue letter from either the Oklahoma Attorney General's Office of Civil Rights Enforcement or the EEOC.**

Plaintiff's Title VII gender discrimination claim fails as to all defendants because Plaintiff failed to file her lawsuit within ninety (90) days of her receipt of a right to sue letter. *The ninety-day deadline applies regardless of whether the Oklahoma Attorney General's Office of Civil Rights Enforcement or the EEOC is the issuer of the right to sue letter.*

On *September 23, 2015* the EEOC mailed to Plaintiff its Dismissal and Notice of Rights, which included the following determination:

> Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.
>
> -NOTICE OF SUIT RIGHTS -
> . . .  This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. **Your lawsuit must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice;** or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

*See* Exhibit 17 (emphasis in original).

Pursuant to OKLA. STAT. tit. 25, § 1350(I), "No action may be filed in district court as provided in this section **more than ninety (90) days after receiving a Notice of a Right to Sue** from the Attorney General's Office of Civil Rights Enforcement." (Emphasis added). Accordingly, Plaintiff had to file her lawsuit in state or federal court within 90 days of receiving the September 23, 2015 EEOC Dismissal and Notice of Rights. Allowing time for mailing, Plaintiff should have received the right to sue letter before the end of September 2015, and accordingly, **her lawsuit should have been filed between September 30, 2015 and December 29, 2015,** allowing a week for mailing and receipt of the EEOC notice. However, Plaintiff's original Petition against the City, Murray, and Jayne-Dornan was not filed in the 90-day window under state or federal law. Instead, Plaintiff's original petition was filed on ***August 27, 2015*** in McIntosh County Case Number CJ – 2015 – 93, approximately one month ***prior*** to receiving a right to sue letter. She did not have a right to sue the Defendants when she filed her lawsuit against the Defendants, and her failure to possess a right to sue letter presents a fatal jurisdictional defect for her original Petition. No additional filings occurred in 2015, and her case was voluntarily dismissed by her attorney on June 27, 2016. *See* Statement of Facts, ¶ 5. The dismissal was without prejudice, so the Plaintiff had one year within which to refile her lawsuit pursuant to OKLA. STAT. tit. 12, § 100.

Plaintiff commenced her claims against the Defendants on August 27, 2015, before she had a right to sue the Defendants, and thus her Title VII claim is barred. Even if the Court finds that the Plaintiff's Title VII claim was not commenced until June 26, 2017 (the date she refiled her action pursuant to the saving statute), the claim nevertheless would be barred for failure to file within the 90-day time frame set forth by the EEOC right to sue letter (which would have ran

from September 30, 2015 to December 29, 2015).  Further, if the Court were to determine that the Title VII claim originated on June 26, 2017, but relates back to the original Petition filed on August 27, 2015, the claim remains barred because the original Petition was filed prior to the Plaintiff's receipt of a right to sue.  Thus, neither the state nor federal court have jurisdiction to determine the Plaintiff's gender discrimination claim.

## C. Plaintiff cannot satisfy the elements of a *prima facie* claim for Title VII gender discrimination.

This Court discussed the elements of a *prima facie* discrimination claim in the September 28, 2018 Opinion and Order as follows:

> Here, the Court finds that to state a prima facie case of discrimination, the plaintiff must allege: (1) that she belongs to a protected class, (2) that she suffered an adverse employment action, and (3) that such action "took place under circumstances giving rise to an inference of discrimination."  EEOC v. PVNF, LLC, 487 F.3d 790, 800 (10th Cir. 2007).

*See* Opinion and Order (Doc. No. 28), at 5-6.  While the Court found that the Plaintiff had alleged facts sufficient to withstand dismissal, on summary judgment she has no evidence to support her various allegations.  Tellingly, ***the Plaintiff could not even remember the basis for her EEOC claim of discrimination when questioned about it at her deposition!***  *See* Statement of Facts, at ¶ 34.  Plaintiff has no evidence to show that Murray told her she did not have to report for a physical agility test.  To the contrary, she testified at her deposition that Murray advised her that she was required to take and pass the agility test or she was "finished."  *See* Statement of Facts, at ¶ 32.  Plaintiff likewise has no evidence to support her allegation that male employees were treated differently, as she testified at her deposition that she knew of ***no male employees who failed the agility test (or did not take it at all), but were allowed to continue working as a police officer for the City of Eufaula.***  *See* Statement of Facts, at ¶ 35.  Nor has Plaintiff provided any evidence to support her assertion that male officers were not asked to

perform an agility test, that male officers received more time when provided with notice of termination, or that male employees who were on medical leave were treated differently than the Plaintiff was.  Nor has Plaintiff provided any evidence to show that she was the victim of retaliation for filing a worker's compensation claim, as she testified that she filed the claim after she failed the agility test, and that neither Jayne-Dornan nor Murray ever said anything to her about the worker's compensation claim.  *See* Statement of Facts, at ¶¶ 29-30.   Nor has the Plaintiff provided any evidence that male employees were allowed to "avail their rights without retaliation."  *See* Petition, Doc. No. 2-1.  Lastly, the Plaintiff has failed to show that Murray terminated her based on her gender, as the evidence clearly shows Murray terminated the Plaintiff for her refusal to take the required CLEET agility test within the six (6) months required by law.  *See* OKLA. STAT. tit. 70 §§ 3311, 3311.11.  The Plaintiff has failed to show that the reason given for her termination, failure to meet the statutory requirements for employment, is a pretext for her termination.  The Plaintiff has simply failed to support any of her allegations of gender discrimination with evidence of any kind.

Nor can the Plaintiff establish that she was qualified for a position as a City of Eufaula police officer.  Plaintiff was hired by the City for a police officer position in September 2013. She was permitted to serve as a temporary police officer while waiting to attend CLEET Academy, but was required to obtain CLEET certification to continue her employment as a police officer per Oklahoma law.  *See* OKLA. STAT. tit. 70, § 3311.  OKLA. STAT. tit. 70, § 3311.11 sets forth as a requirement for CLEET certification the following:

> A.  Beginning November 1, 2009, any person or peace officer who desires to attend the basis law enforcement academy conducted by CLEET shall, prior to admission, be required to provide proof of a score of a minimum of seventy percent (70%) on a physical agility test approved by CLEET to assure the applicant is in sufficient physical condition to avoid unnecessary injury during the basic law enforcement academy training.

*See* OKLA. STAT. tit. 70, § 3311.11.   Further, Oklahoma law requires police officers to obtain CLEET certification within six months of the date of hire to remain employed.  *See* OKLA. STAT. tit. 70, § 3311(E)(4) ("Every person who has not been certified as a police or peace officer and is duly appointed or elected as a police or peace officer shall hold such position on a temporary basis only, and shall, within six (6) months from the date of appointment or taking office, qualify as required in this subsection or forfeit such position.").   Plaintiff failed to attend CLEET academy within six months of taking the appointment as a police officer, and likewise failed to pass the required physical agility test.  Therefore, ***Plaintiff was statutorily disqualified from her temporary position as a police officer.*** *See Barzellone v. City of Tulsa*, 210 F.3d 389 (10th Cir. 2000) (the Court found that the plaintiff could not establish the essential elements of a gender discrimination claim under Title VII because she was not qualified for the position at issue); and *Mitchell v. City of Bartlesville, Oklahoma,* No. 11-CV-367-GKF-TLW, 2013 WL 1499042 (N.D. Okla. Apr. 11, 2013) (rejecting the plaintiff's gender discrimination claim on grounds that she failed to show herself qualified for the position she applied for and did not receive).   While Oklahoma law affords some leeway in the retention of police officers as temporary employees pending their successful completion of CLEET requirements (including the agility test) within an established time frame, Oklahoma law is clear that if the completion is not made within that time, employment is forfeited.  *See* OKLA. STAT. tit. 70, § 3311(E)(4).   The OESC denied benefits on grounds that the Plaintiff had violated company policy.  *See* Statement of Facts, at ¶ 43.  Significantly, the Plaintiff attested in her application for unemployment benefits that she was able and available to seek and accept employment in keeping with her work restrictions, which were none.  *See* Exhibit 18.   There was no excuse for the Plaintiff's failure to take the agility test. Plaintiff cannot show she was qualified for the position of police officer, and therefore cannot

show that her gender was the reason for her termination upon her failure to meet those qualification standards.

II.     **Defendants are entitled to summary judgment as to Plaintiff's claim for malicious interference with a contractual relationship.**

Plaintiff has alleged that the Employee Manual created a contract between the City and the Plaintiff.  It has already been judicially determined in this action that ***there was no contract between Plaintiff and the City***, as the City clearly disclaimed any intent to make the provisions of the Employee Manual part of the employment relationship.   *See* Opinion and Order (Doc. No. 28, at 7-8; Statement of Facts, ¶ 15.  While the Court permitted the claim to survive dismissal by noting that Oklahoma recognizes tortious interference with prospective economic advantage, the Plaintiff's claim was pled as a tortious interference with a contractual relationship.  As the Court noted in its Opinion and Order, there is a lack of Oklahoma Supreme Court authority directly recognizing a claim for tortious interference with prospective economic advantage.  *See* Opinion and Order (Doc. No. 28), at 10.  In *Miller v. Johnson,* 2013 OK CIV APP 59, 307 P.3d 387, 389, the Oklahoma Court of Civil Appeals refused to extend the tort to include "tortious interference with an expectation of inheritance," and cited *Tarrant v. Guthrie First Capital Bank,* 2010 OK CIV APP 82, § 15, 241 P.3d 280, 284, where the court refused to adopt a prima facie tort theory of recovery ***until the Oklahoma Supreme Court adopts it***.  Here, the Plaintiff's claim should not be interpreted as one for tortious interference with a prospective economic advantage, as that is not the tort the Plaintiff pled.

The terms "malicious interference," "intentional interference," and "tortious interference" with contract or business relations have been used interchangeably in Oklahoma jurisprudence, and do not designate distinct torts. *Tuffy's Inc. v. City of Oklahoma City*, 2009 OK 4, 212 P.3d 1158, 1165. *Tuffy's* sets forth the elements of a claim for malicious interference with a business

relationship as: "1) interference with a business or contractual right; 2) malicious and wrongful interference that is neither justified, privileged, nor excusable; and 3) damage proximately sustained as a result of the interference."  *Id.* at 1165 (citations omitted).  For the Plaintiff to show the requisite malice, she must demonstrate the termination was done in bad faith, it was "unreasonable and wrongful," and was "done intentionally, without just cause or excuse." *Id.*

The Oklahoma Court of Civil Appeals discussed the nature of a tortious interference claim in *Hawk Enterprises, Inc. v. Cash America Int'l, Inc.*, 2012 OK CIVA PP 66, 282 P.3d 786, stating: "In defining the nature of a tortious interference claim, Oklahoma 'has repeatedly protected contractual relationships between parties from ***unprivileged, unjustified, and inexcusable interference from one who is not a party to the contract or business relation*.'. . . *Additionally, the claim is viable only if the interferor is not a party to the contract or business relationship. . . .*" *Id.* at 791–92 (emphasis added, citation omitted).  Here, the Plaintiff alleges that Jayne-Dornan and Murray, who are representatives and employees of the City, have interfered with her contract of employment.  The Defendants are not third-parties.  They represent the City, with whom the Plaintiff alleges she had a contract.  Thus, the Plaintiff cannot show that they are third-party interferors, as they are parties to the alleged contract the Plaintiff claims was interfered with.  This point is evident from the Plaintiff's own allegations in her First Amended Petition, wherein she states: "Defendants Murray and Jayne-Dornan were the supervisors who fired Plaintiff, and interfered with her contractual relationship by terminating her." *See* First Amended Complaint, Doc. No. 2-1, at ¶ 12.  No third-party would have had the ability to fire the Plaintiff.  Only the entity with which she had the alleged contract would have the ability to terminate it.

*Hawk* also notes that the interference alleged must be "unprivileged, unjustified, and inexcusable." 282 P.3d at 791. Here, the Plaintiff can provide no evidence that the Defendants' actions were unprivileged, unjustified, and inexcusable, as her First Amended Complaint alleges that the tortious act was her termination resulting from her failure to take the required physical agility test. The Plaintiff was required by law to pass the CLEET agility test within six (6) months of her hire date. Plaintiff was hired on September 16, 2013, and she failed to take the test by the March 16, 2014 deadline. Due to her injury and medical leave, the Defendants gave the Plaintiff until June 12, 2014—nearly three additional months—to take an agility test. She failed to do so, even though she was released for work with no restrictions as of June 10, 2014. The Plaintiff's termination based on Plaintiff's failure to satisfy the statutory requirements of her employment cannot form the basis of a tortious interference with contract or prospective economic advantage claim. As to whether the actions of Murray and Jayne-Dornan were privileged, the Eighth Circuit has stated that the "innocent decisionmaker" should not be held personally liable under § 1983 for the discriminatory animus of a subordinate. *See Dedmon v. Staley,* 315 F.3d 948, 949 n. 2 (8th Cir.2003) ("Although other circuits have stated that discriminatory or unlawful motive can be imputed to the formal decisionmaker [under § 1983], we think that is only for the limited purpose of determining whether the employer could be held liable. We found no case suggesting that an otherwise innocent decisionmaker could be personally liable for the discriminatory motive of another.") (internal citation omitted).

Plaintiff's First Amended Complaint also alleges retaliation for filing a workers' compensation claim, yet she testified at her deposition that she failed the agility test before she even filed the workers' compensation claim (*see* Statement of Facts, at ¶ 33), and that neither

Murray nor Jayne-Dornan ever spoke to her about the workers' compensation claim (*see* Statement of Facts, at ¶ 29, 30).

Plaintiff's First Amended Complaint also alleges that Murray told her she did not have to perform the physical agility test one day, then the next day ordered her to perform the test.  *See* First Amended Petition (Doc. No. 2-1), at ¶ 10.  Plaintiff's own testimony belies this assertion, as she unequivocally testified at her deposition that Murray told her she must complete the agility test or she would be terminated.  *See* Statement of Facts, at ¶ 32.

Plaintiff's First Amended Complaint also alleges that she was falsely accused of misconduct based on false statements, because she had been in a different location at the time of the alleged conduct and could not have done what she was accused of.  *See* First Amended Petition (Doc. No. 2-1), at ¶ 10.  The Plaintiff simply has no evidence to support her claim of malicious interference.  In the absence of any evidence to support her claim, the Defendants are entitled to summary judgment.

**III.   Plaintiff's claims in this case are barred by the workers' compensation exclusivity provision.**

The Plaintiff filed a workers' compensation claim arising out of her alleged work-related injury sustained in May 2014.  *See* First Amended Complaint (Doc. 2-1), at ¶¶ 4, 7, 11. Plaintiff's instant lawsuit is merely an attempt to re-cast that same claim under the guise of different causes of action.  Pursuant to OKLA. STAT. tit. 85A, § 5, "the rights and remedies granted to an employee subject to the provisions of the Administrative Workers' Compensation Act ["**AWCA**"] shall be exclusive of all other rights and remedies of the employee . . . against the employer. . . ."  *See Odom v. Penske Truck Leasing Co.,* 2018 OK 23, ¶ 14, 415 P.3d 521, 527 ("The plain language of 85A O.S. Supp. 2013 § 5 unambiguously abrogates the dual-capacity doctrine with regard to employers. . . .").  OKLA. STAT. tit. 85A, § 7 grants the Workers'

Compensation Commission exclusive jurisdiction to hear and decide claims based on an employer's discrimination or retaliation against an employee when an employee has in good faith filed a claim under the AWCA.   Section 7 sets the limit of liability for discrimination/retaliation, and does not provide for punitive damages.  *See* OKLA. STAT. tit. 85A, § 7.

Prior to enactment of the AWCA, if an employee was injured by an employer's actions which it knew were substantially certain to cause injury, the claim fell outside the exclusive remedy provisions of the Workers' Compensation Act.  *See Parret v. UNICCO Service Co.*, 2005 OK 54, 127 P.3d 572.  The enactment of ACWA superseded *Parret*, and now the ACWA is the exclusive remedy for injured employees unless they can make a showing that the injury was caused by an intentional tort committed by the employer as a result of willful, deliberate, specific intent of the employer to cause such injury.  *See* OKLA. STAT. tit. 85A, § 5(B)(2).  Because the Plaintiff cannot show the actions of the Defendants were willful and deliberate, with specific intent to cause injury to Plaintiff, the AWCA is the exclusive remedy for the Plaintiff.

Further, Plaintiff alleges she sustained an on-the-job injury in the course and scope of her employment in May of 2014. *See* First Amended Complaint (Doc. 2-1), at ¶ 4.  Plaintiff asserts that the Defendants "were emboldened by their interpretation of the changes that went into effect in 2014 in the new Oklahoma worker's compensation laws, and believed that said changes to said law gave them unfettered discretion to interfere with rights of workers in Oklahoma without consequence." *See id.* at ¶ 7.  In support of her claim against Murray and Jayne-Dornan for malicious interference with a contractual relationship, Plaintiff asserts that she "availed herself of his [sic] rights under 85A O.S. §§ 1 et seq., by seeking necessary medical treatment," and that

"Defendants Murray and Jayne-Dornan retaliated against Plaintiff by terminating her in June of 2014." *See id.* at ¶ 11 (emphasis added).

It is clear from the face of the Petition that each of the claims asserted therein are based on the same factual nexus and transaction as the Plaintiff's claims which were asserted in the Workers' Compensation Court.   The Plaintiff has merely changed some wording and re-classified the same claims for this district court proceeding.   The Workers' Compensation Court had exclusive jurisdiction over the Plaintiff's claims.   Under these circumstances, the Plaintiff cannot herein re-litigate claims arising out of the same transaction and facts as those involved in her workers' compensation case.

## IV.    Defendants are entitled to summary judgment as to Plaintiff's claim for punitive damages.

Punitive damages are only available pursuant to the strictures of OKLA. STAT. tit. 23, § 9.1, which requires a showing of reckless disregard for the rights of others or intentional conduct with malice by clear and convincing evidence.   Here, there is simply no evidence that could reasonably support a conclusion that Defendants acted recklessly, let alone with a bad intent or malice.   Additionally, Oklahoma's punitive damage statute requires clear and convincing evidence, not just some evidence, of reckless or intentional conduct, and there is no such evidence here.

<u>Conclusion</u>

For the reasons set forth herein, Defendants respectfully request that the Court grant their Motion for Summary Judgment on Plaintiff's causes of action for Title VII gender discrimination, malicious interference with a contractual relationship, and punitive damages, and grant Defendants any all further relief to which they may be entitled, in law or equity.

WHEREFORE, Defendants City of Eufaula, Don Murray, and Selina Jayne-Dornan respectfully request that the Court enter an Order granting summary judgment in Defendants' favor regarding all remaining claims, and granting the Defendants any other relief to which they are entitled.

## CERTIFICATE OF SERVICE

I, Amy E. Hampton, hereby certify that on this 8th day of October, 2018, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to all ECF registrants who have appeared in the case:

Brendan M. McHugh
P.O. Box 1392
Claremore, OK 74018-1392

*Attorney for Plaintiff Candy Webb*

s/Amy E. Hampton
**AMY E. HAMPTON**

AEH/aeh