# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CANDY N. WEBB, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>DON MURRAY, and SELINA )<br>JAYNE-DORNAN. )<br>)<br>Defendants. ) | Case No. CIV-18-01-SPS |

## OPINION AND ORDER

This matter comes before the Court on motion for summary judgment by the Defendants Don Murray and Selina Jayne-Dornan. For the reasons set forth below, the Court finds that the Defendants' Motion for Summary Judgment and Brief in Support [Docket No. 30] should be GRANTED as to the Plaintiff's claim for gender discrimination pursuant to 42 U.S.C. § 1983. The Court further finds that the Plaintiff's remaining state law claim for malicious interference with a contractual relationship should be remanded to the District Court of McIntosh County.

## PROCEDURAL HISTORY

The Plaintiff filed suit against the Defendants and the City of Eufaula in the District Court of McIntosh County, Case No. CJ-17-46, on June 26, 2017. The Defendants removed the case to this Court on January 3, 2018, asserting federal question jurisdiction pursuant to 28 U.S.C. § 1331 on the basis of the Section 1983 claim against the Defendant Murray. The Plaintiff's petition also set out three state law claims: malicious interference with a contractual relationship and intentional infliction of severe emotional distress against the

Defendants Murray and Jayne-Dornan, and breach of contract against the City of Eufaula. Upon motion by the Defendants, the Court dismissed the petition for lack of subject matter jurisdiction but granted the Plaintiff leave to file an amended complaint. *See* Docket No. 17. On August 8, 2018, the Plaintiff filed her First Amended Complaint raising the same four claims, and Defendants again moved for dismissal. *See* Docket Nos. 18-19. The Court dismissed the Plaintiff's claim for breach of contract (which disposed of the case in its entirety as to the City of Eufaula) as well as the state court claim for intentional infliction of emotional distress, leaving Plaintiff with her Section 1983 gender discrimination claim against Defendant Murray and her malicious interference claim against both individual Defendants.

## LAW APPLICABLE

Summary judgment should be granted if the record shows that "there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party has the burden of showing the absence of a genuine issue of material fact, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), and the evidence is to be taken in the light most favorable to the non-moving party, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). However, an adverse party must "properly support an assertion of fact or . . . properly address another party's assertion of fact as required by Rule 56(c)" by "citing to particular

parts of materials in the record . . . or . . . showing that the materials cited do not establish the absence or presence of a genuine dispute[.]" Fed. R. Civ. P. 56(c).

## FACTUAL BACKGROUND

The relevant undisputed facts[1] in this case reflect that the Plaintiff was hired in September 2013 as a police officer for the City of Eufaula. At the time she was hired, the Plaintiff knew that she would have to take and pass a physical agility test. *See* Docket No. 30, Ex. 3, p. 3. On May 6, 2014, the Plaintiff took the physical agility test in Ada, Oklahoma, and did not pass, testifying that she injured her knee during this first attempt. *See* Docket Nos. 30, Ex. 3, p. 5; 40, Ex. 1, p. 1. The claimant testified at her deposition that she took the test again that same day and again did not pass. *See* Docket No. 30, Ex. 3, pp. 5-6.

The Plaintiff sought medical care for her knee injury the following day, and Physician's Assistant Brandy Tiger wrote a letter on May 7, 2014 stating that the Plaintiff was under medical care and could not return to work for six days, until May 13, 2014. *See id.*, Ex. 4. Ms. Tiger then drafted a letter on May 12, 2014, stating that the Plaintiff could not return to work for "1-2 day(s)" and that she could return to work on May 14, 2014, but that her activity would be restricted to "no climbing, running, kneeling for 2-3 weeks for

---

[1] The Court would note that the Plaintiff's Response and Objection in Opposition to Defendants' Motion for Summary Judgment [Docket No. 40] contains a "Concise Statement of Material Facts to Which Genuine Issues of Fact Exist" but does not directly address the "Statement of Undisputed Material Facts" contained in the Defendants' Motion for Summary Judgment and Brief in Support [Docket No. 30, pp. 2-12]. *See* EDOK L.Civ.R. Rule 56.1(c) ("Each fact in dispute shall be numbered, shall refer with particularity to those portions of the record upon which the opposing party relies, and if applicable, *shall state the numbered paragraphs of the movant's facts that are disputed.*" [emphasis added].

moderate to severe knee sprain," and that she needed three to four weeks to allow the swelling to improve. *See id.*, Ex. 5. At some point in May 2014, Defendant Murray, as Chief of the Eufaula Police Department, told the Plaintiff that she would have to re-take the physical agility test on June 12, 2014. *See* Docket No. 30, Ex. 11; No. 40, pp. 3-4, ¶ 8. At this time, Defendant Murray informed the Plaintiff that if she did not pass this test, she would be terminated. *See* Docket No. 30, Ex. 3, p. 13.

On May 28, 2014, Defendant Murray sent a hand-delivered letter to the Plaintiff stating that, as a result of Ms. Tiger's May 14, 2014 letter, she would be placed on modified duties beginning Thursday, May 29, 2014. *See* Docket No. 30., Ex. 6. That same day, Dr. Barbara Tuley wrote a letter stating that the Plaintiff needed a temporary medical leave until her next medical visit on June 3, 2014. *See id.*, Ex. 7. On June 3, 2014, Dr. Tuley then drafted a letter stating that the Plaintiff was under medical care and could not return to work until June 10, 2014. The note indicates that there were no activity restrictions upon the Plaintiff's return to work. *See id.*, Ex. 9. On June 10, 2014, Dr. Tuley drafted a final letter, reiterating that the Plaintiff could return to work on June 11, 2014, with no activity restrictions. *See id.*, Ex. 10.

The Plaintiff did not appear for the physical agility test on June 12, 2014, and Defendant Murray informed her via letter that same day that her employment had been terminated as a result. *See id.*, Ex. 11. On June 16, 2014, Defendant Murray had a letter hand delivered to the Plaintiff, informing her that there would be a pre-determination hearing at the office of Mayor Selina Jayne-Dornan, co-Defendant, as to two incidents: (i) her failure to appear for the physical agility test on June 12, 2014, and (ii) conduct

unbecoming an officer. *See id.*, Ex. 12. Defendant Jayne-Dornan then had a Notice of Recommendation of Termination, dated June 23, 2014, hand delivered to the Plaintiff. In it, she stated that she concurred with Defendant Murray's recommendation for termination of Plaintiff's employment. *See id.*, Ex. 14. The Plaintiff appealed her termination to the City Council, and it was upheld on July 29, 2014. *See id.*, Ex. 15.

The Plaintiff further testified at her deposition that she was unaware of any female police officers for the City of Eufaula who had failed the CLEET requirement but allowed to keep their job, and that she was unaware of any male police officers who had failed the CLEET agility test but had nevertheless retained their positions. *See id.*, Ex. 3, pp. 19-20. Nor was the Plaintiff aware of female or male police officers who had taken temporary medical leave, returned to work, failed to meet the agility requirements, and were treated differently. *Id.*

## ANALYSIS

The Defendants contend that they are entitled to summary judgment on the two remaining claims in this case for gender discrimination and malicious interference with a contractual relationship. The Court agrees with respect to the gender discrimination claim but concludes that the malicious interference with a contract claim should be remanded to the District Court of McIntosh County for disposition.

**Section 1983 Claim.** As an initial matter, the Court notes that Defendant Murray has asserted a number of arguments related to a gender discrimination claim arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *e. g.*, that the Plaintiff failed to exhaust her administrative remedies. Such arguments are irrelevant here, as the Plaintiff

has not asserted such a claim but instead a Section 1983 claim for gender discrimination. *See Wood v. City of Topeka, Kan., Topeka Housing Authority*, 90 F. Supp. 2d 1173, 1187 (D. Kan. 2000) ("[G]ender discrimination [] can violate the Equal Protection Clause of the Fourteenth Amendment and trigger a §1983 cause of action[.]"). *See also Brown v. Hartshorne Public School Dist. No. 1*, 864 F.2d 680, 683 (10th Cir. 1988) ("Claims under section 1983 and Title VII differ significantly in their statutes of limitations, exhaustion requirements, and available remedies. The most important distinction [] is that a section 1983 plaintiff need not comply with the exhaustion requirements of Title VII."); *Starrett v. Wadley*, 876 F.2d 808, 814 (10th Cir. 1989) ("If a plaintiff can show a constitutional violation by someone acting under color of state law, then the plaintiff has a cause of action under Section 1983, regardless of Title VII's concurrent application."). The Defendant Murray does, however, assert that the Plaintiff cannot establish a prima facie case of gender discrimination, which is relevant to a Section 1983 claim. As is the case with a Title VII claim, a Section 1983 gender discrimination claim is evaluated under the familiar burden-shifting test set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) where there is no direct evidence of gender discrimination. *See Adamson v. Multi Community Diversified Services, Inc*., 514 F.3d 1136, 1145 (10th Cir. 2008).

The Tenth Circuit discussed the *McDonnell Douglas* test in *English v. Colorado Dept. of Corrections*, 248 F.3d 1002 (10th Cir. 2001):

> In order to survive summary judgment, a plaintiff relying on *McDonnell Douglas* bears an initial burden of establishing a prima facie case intended to eliminate the most common nondiscriminatory reasons that might account for the adverse employment action. Once the plaintiff has established a prima facie case, the burden then 'shift[s] to the employer to articulate some

> legitimate, nondiscriminatory reason' for taking an adverse employment action against the plaintiff. If the defendant successfully meets its burden of production, the burden shifts back to the plaintiff to put forth evidence sufficient to allow a jury to find that the defendant's reason is pretextual, *e.g.,* that it is unworthy of belief.

248 F.3d at 1008, *citing McDonnell Douglas*, 411 U.S. at 802. Although "[t]he elements of a discrimination lawsuit are the same whether brought pursuant to § 1983 or Title VII[,]" *Cooper v. Northwest Rogers County Fire Protection Dist.*, 2017 WL 3710081, at *7 (N.D. Okla. Aug. 28, 2017), "[t]he prima-facie case required to support a claim of intentional discrimination under the Equal Protection Clause varies based on the context and nature of the facts." *Morman v. Campbell County Memorial Hospital*, 632 Fed. Appx. 927, 934 (10th Cir. 2015). "A prima facie case generally requires plaintiff to show by a preponderance of the evidence that (1) she is a member of a protected class, (2) she suffered an adverse employment action and (3) the challenged action occurred under circumstances which give rise to an inference of discrimination." *McDonald v. City of Wichita, Kan.*, 156 F. Supp. 3d 1279, 1297 (D. Kan. 2016), *citing Bennett v. Windstream Communications*, 792 F.3d 1261, 1266 (10th Cir. 2015), *citing EEOC v. PVNF, LLC*, 487 F.3d 790, 800 (10th Cir. 2007).[2] However, "[t]he critical prima facie inquiry in all cases is whether the plaintiff

---

[2] The Tenth Circuit has occasionally used a four-part analysis for establishing a prima facie case of discrimination, *see, e. g., Swackhammer v. Sprint/United Management Co.*, 493 F.3d 1160, 1166 (10th Cir. 2007) (Plaintiff must establish "a prima facie case of gender discrimination by showing that she: (1) belongs to a protected class; (2) was qualified for her position; (3) was discharged despite her qualifications; and (4) was terminated "under circumstances which give rise to an inference of unlawful discrimination."), but has on the whole expressed a "preference for more concise formulations." *Bennett*, 792 F.3d at 1266 & n.1 ("While the elements of a prima facie case 'are neither rigid nor mechanistic, their purpose is the establishment of an initial inference of unlawful discrimination warranting a presumption of liability in plaintiff's favor.'"), *citing Adamson*, 514 F.3d at 1146.

has demonstrated that the adverse employment action occurred under circumstances which give rise to an inference of unlawful discrimination. There must simply be a logical connection between each element of the prima facie case and the inference of discrimination." *Plotke v. White*, 405 F.3d 1092, 1100 (10th Cir. 2005). Here, the Plaintiff has established the first two elements of the *McDonnell Douglas* test, as she is a member a protected class and suffered the adverse employment action of termination. Therefore, the only issue is whether the Plaintiff can demonstrate by a preponderance of the evidence that her termination occurred under circumstances suggesting gender discrimination.

The Defendant Murray contends that the Plaintiff has failed to establish her prima facie case because she has no evidence to support her allegations. Specifically, Defendant Murray notes that the Plaintiff testified in her deposition that Defendant Murray told her she had to take the physical agility test or she would be "finished," she could not identify male employees who failed the agility test but were allowed to continue working as police officers, and she further testified that neither of the Defendants in this case said anything to her about her worker's compensation claim. Furthermore, they assert she has provided no evidence she was terminated for a reason related to her gender, and that she was not qualified for a position as a City of Eufaula police officer because she had not met the requirements of CLEET certification within six months of being hired. The Court notes that obtaining CLEET training and passing a physical agility test is an Oklahoma statutory requirement. *See* Okla. Stat. tit. 70, § 3311(E)(4) ("Every person who has not been certified as a police or peace officer and is duly appointed or elected as a police or peace officer shall hold such position on a temporary basis only, and shall, within six (6) months from

the date of appointment or taking office, qualify as required in this subsection or forfeit such position."). *See also* Okla. Stat. tit. 70, § 3311.11(B) ("[A]ny person or peace officer who desires to attend the basic law enforcement academy conducted by CLEET shall, prior to admission, be required to provide proof of a score of a minimum of seventy percent (70%) on a physical agility test approved by CLEET to assure the applicant is in sufficient physical condition to avoid unnecessary injury during the basic law enforcement academy training.").

The Plaintiff, on the other hand, contends that she has established a prima facie case of discrimination, but the Court is not persuaded there is evidence to support the claim that the Plaintiff was terminated under circumstances suggesting gender discrimination. The Plaintiff refers to a shooting incident in which she was involved in while on duty that she claims caused her PTSD, and disputes the unbecoming conduct allegation by asserting that she elsewhere at the time. She also asserts that Captain Charles Hammett told her on June 11, 2014, that she was to return to light duty and did not have to take the physical agility exam the following day. Assuming *arguendo* that these contentions are true, they do not appear to be gender-based. Furthermore, the Plaintiff's unsubstantiated statements that she is unaware of any other employees being treated as she was is insufficient as evidence of gender discrimination; the Plaintiff does not point to a single person male or female who was treated differently than she was. *See McCrorey v. McHugh*, 2014 WL 12787987, at *9 (D. N.M. Sept. 23, 2014) ("Plaintiff cites portions of his own testimony in an attempt to show he was given less favorable treatment. . . . The material cited by Plaintiff is vague and general, amounting to little more than the personal opinions of Plaintiff[.]").

In summary, although the Plaintiff has established the first two elements of a prima facie case, she has wholly failed to establish the most important element of the *McDonnell Douglas* test: that she was terminated under circumstances that give rise to an inference of gender discrimination. Accordingly, Defendant Murray is entitled to summary judgment on the Plaintiff's claim for such discrimination under Section 1983.

**Malicious Interference Claim.** The Plaintiff's remaining claim for malicious interference with a contract under Oklahoma state law, and there is no evidence of diversity jurisdiction in this case. The Court's jurisdiction over such a claim arises under 28 U.S.C. § 1367(a), which provides in pertinent part that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Section 1367 also provides, however, that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if [] the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c). Indeed, the Tenth Circuit has "repeatedly recognized that this is the preferred practice." *Gaston v. Ploeger*, 297 Fed. Appx. 738, 746 (10th Cir. 2008). *See also Smith v. City of Enid By and Through Enid City Commission*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims."). Furthermore, all parties indicated at the pretrial conference that they preferred a remand to the District Court of McIntosh County to this Court's retaining jurisdiction of any surviving state law

claim. Accordingly, the Court finds that its discretion under Section 1367 would be best exercised by declining to retain the case under its supplemental jurisdiction and instead remanding the Plaintiff's sole remaining state law claim to the District Court of McIntosh County.

## CONCLUSION

In summary, the Court finds that the Defendants' Motion for Summary Judgment should be granted as to the Plaintiff's claim for gender discrimination pursuant to 42 U.S.C. § 1983, but that the motion should remain pending for consideration upon remand by the District Court of McIntosh County as to the remaining malicious interference claim. Accordingly, IT IS HEREBY ORDERED that the Defendants' Motion for Summary Judgment and Brief in Support [Docket No. 30] is GRANTED as to Count IV (Gender Discrimination), but remains pending as to Count I (Malicious Interference with a Contractual Relationship), which is hereby remanded to the District Court of McIntosh County, in the State of Oklahoma, for further proceedings thereon.

**DATED** this 8th day of November, 2018.

_____
Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma